IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

RAMAN K. SINGH,

    Plaintiff,

v.                                                              Civil Action No. 3:09cv386

GARY HAAS,

    Defendant.

## REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on Plaintiff Singh's motion for entry of default judgment. (Docket No. 10.) On January 22, 2010, the Court held a hearing. Defendant Gary Haas appeared by counsel and objected to this Court's jurisdiction. (*See* Def.'s Mot. to Dismiss for Lack of Jurisdiction.) (Docket No. 20.) On March 30, 2010, the undersigned recommended that the Court deny Haas's Motion to Dismiss for Lack of Jurisdiction. (Report & Recommendation.) (Docket No. 23.) On April 14, 2010, the Court adopted the Report and Recommendation and denied Haas's motion. (Docket No. 24.) Accordingly, Singh's motion for entry of default judgment is now ripe for disposition.

For the reasons stated below, the undersigned RECOMMENDS that Singh's motion for entry of default judgment be GRANTED as to Counts One and Three, and DENIED as to Counts Two and Four. (Docket No. 10.)

# I. Procedural and Factual Background

On June 19, 2009, Singh filed a Complaint in this Court seeking a declaratory judgment and damages as a result of a "controversy [that had] arisen between two authors." (Compl. ¶ 1.) (Docket No. 1.) Singh alleged that on March 3, 2006, he registered a script he had authored entitled *The Sand Relic* with The Writers Guild Association. (Compl. ¶ 2.) The plot of *The Sand Relic* involved "an archaeologist seeking a relic/manuscript written by the Greek hero Odysseus, [and] was set in the Sahara Desert." (Compl. ¶ 2.) When he did not receive a production offer for *The Sand Relic*, Singh rewrote his script and entitled the new version *The Quest*. (Compl. ¶ 2.) He changed the location to the Indian Desert, and "the supposed Odysseus manuscript/relic to one written by Jesus." (Compl. ¶ 2.) Dr. Fred Wyler of BLOCKBUSTER Scripts, LLC ("Blockbuster") suggested that Singh change the title of his script to *The Jesus Manuscript*. (Compl. ¶ 3.) Singh complied. (Compl. ¶ 3.) Singh completed *The Jesus Manuscript* in March of 2006. (Compl. ¶ 3.) He completed the script without contribution from Haas, and received a federal copyright registration for the script in his name alone in 2008. (Compl. ¶¶ 22, 23.)

Haas wrote a novel, and later a screenplay based on the novel, entitled *The Ikon*, whose plot involved art forgery. (Compl. ¶ 4.) Both the novel and the screenplay versions of *The Ikon* were set on a Greek island. (Compl. ¶ 4.) When Haas was unable to sell *The Ikon*, Singh and Haas agreed, at Haas's request, that Singh would rewrite the screenplay version of *The Ikon*. (Compl. ¶ 4.) Singh completed the rewrite in March 2007. (Compl. ¶ 4.) At Haas's request, Singh then edited and rewrote Haas's novel *The Ikon*, completing that work in April 2007. (Compl. ¶ 4.) Copyright registration was issued to Singh and Haas jointly for the rewrite of the

screenplay *The Ikon*. (Compl. ¶ 20.) Both the novel and the screenplay versions of *The Ikon* failed to sell. (Compl. ¶ 5.)

In September 2007, Singh sold an option to *The Jesus Manuscript* to Blockbuster. (Compl. ¶ 6.) The total sale price was $92,000, and the option $9,200. (Compl. ¶ 6.)

After learning of Singh's successful option on *The Jesus Manuscript*, Haas "wrote to various collaborative producers of the screenplay *The Jesus Manuscript*, claiming that *The Jesus Manuscript* infringed his copyright for both the novel and screenplay *The Ikon*." (Compl. ¶ 6.) Haas wrote to Blockbuster, Miramar Entertainment, and Cinemaker Film GMBH, claiming that *The Jesus Manuscript* plagiarized *The Ikon*. (Compl. ¶¶ 24-27.) Singh avers that at the time Haas made these allegations, Haas had not received a copy of *The Jesus Manuscript* and had not read *The Jesus Manuscript*. (Compl. ¶¶ 6, 28, 29.) "Upon receipt of Haas' letter, production of *The Jesus Manuscript* immediately ceased." (Compl. ¶ 7.)

Singh's Complaint asserts four counts. Count One seeks declaratory relief of non-infringement. (Compl. ¶¶ 39-44.) Count Two alleges tortious interference with a contractual relationship. (Compl. ¶¶ 45-51.) Count Three alleges that "Haas libeled Singh when he accused him of plagiarism and broadcast the accusation to the various producers." (Compl. ¶ 53.) Count Four moves the Court for injunctive relief "in the form of a permanent injunction restraining Haas from interfering with Singh's contractual relationship with the various motion picture producers" because "*The Jesus Manuscript* will not be made into a motion picture unless Haas is enjoined from alleging infringement." (Compl. ¶¶ 58, 58(i).) Singh seeks a declaratory judgment that *The Jesus Manuscript* does not infringe upon *The Ikon*; treble damages in the amount of $276,000 for Haas's tortious interference with Singh's contractual relationship with

3

Blockbuster; damages for libel in the amount of $1,000,000; injunctive relief to prevent Haas from bringing lawsuits against Singh for copyright infringement of *The Jesus Manuscript*; attorney's fees; and punitive damages in the amount of $3,000,000. (Compl., Relief Requested.)

Because Haas had not made an appearance or filed a responsive pleading, the Clerk entered default on September 25, 2009. (Docket No. 7.) On October 16, 2009, Singh moved for entry of default judgment. (Docket No. 10.)

On November 27, 2009, the Court received a letter from Haas dated November 14, 2009. (Docket No. 12.) Haas stated that he had filed his answers "in timely fashion" and sought an update of the status of his case. Letter from Gary Haas to Clerk of Court (Nov. 14, 2009).

On December 3, 2009, the Court received a second letter from Haas, dated November 18, 2009. (Docket No. 13.) In his second letter, Haas requested that the Court direct Singh's counsel to remove Singh's Complaint from the internet, because the online posting of the Complaint was "causing intentional stress and harm to [his] person through hearsay in a case not yet proven." Letter from Gary Haas to Clerk of Court (Nov. 18, 2009) ("Nov. 18, 2009 Haas Letter"). On December 8, 2009, the Clerk's Office acknowledged receipt of the Nov. 18, 2009 Haas Letter and advised Haas that all matters before the Court are public record. Letter from Clerk's Office to Gary Haas (Dec. 8, 2009).

On December 11, 2009, the Court set this matter for a hearing on Singh's motion for default judgment. (Docket No. 14.)

On December 22, 2009, the Court again received a letter from Haas, this time dated December 7, 2009. (Docket No. 15.) In this letter, Haas alleged "foul play" because he stated that on August 24, 2009, he "answered the 'Complaint' listed against [his] person" by mailing

his response to the Albert V. Bryan Courthouse in Alexandria, Virginia. Letter from Gary Haas to the Honorable Henry E. Hudson (Dec. 7, 2009) ("Dec. 7, 2009 Haas Letter"). Haas asserted that he would never have permitted the case to move forward "with nothing said in [his] defense." Dec. 7, 2009 Haas Letter. In support of his assertions that he timely mailed his answer, Haas attached receipts purporting to be from a Greek post office. Dec. 7, 2009 Haas Letter & Ex. 1.[1]

On January 19, 2010, the Court received a fourth letter from Haas. (Docket No. 17.) Haas again asserted that he had mailed timely responses to the Complaint and, in addition, raised jurisdictional challenges. Letter from Gary Haas to the Clerk of Court of Virginia (Jan. 12, 2010) ("Jan. 12, 2010 Haas Letter"). Haas requested that the Clerk's Office apprise him of the status of the case. Jan. 12, 2010 Haas Letter.

On January 22, 2010, the Court held a hearing on Singh's motion for entry of default judgment. Haas appeared by counsel and objected to this Court's exercise of personal jurisdiction, subject matter jurisdiction, and venue. (Mem. of Law in Supp. of Def.'s Mot. to Dismiss for Lack of Jurisdiction and Venue 1.) (Docket No. 21.) The undersigned issued a Report and Recommendation recommending that Haas's motion be denied because Haas had waived any objection to personal jurisdiction, the Court properly exercised subject matter jurisdiction, and venue lies in this district. (*See* Report & Recommendation.) On April 14, 2010, the Court adopted the Report and Recommendation and denied Haas's motion.

---

[1] The first attachment to the December 22, 2009 Haas letter is a photocopy of three documents written in Greek. Handwritten notes state, "COMPLAINT ANSWER DOCUMENTS SENT 24 AUGUST 2009 'REGISTERED' by GREEK POST OFFICE." Dec. 7, 2009 Letter Ex. 1.

5

## II. Standard of Review

Federal Rule of Civil Procedure 55 states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The party seeking entry of default judgment must then "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true." *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal citations omitted). The clerk's entry of default does not itself warrant the Court's entry of default judgment. *Id.* "There must be a sufficient basis in the pleadings for the judgment entered." *Id.* Therefore, before entry of default judgment, the Court must determine whether the allegations of the complaint support the relief sought. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). This is so because "[d]efault is a harsh measure because it ignores the merits," *Bogopa Serv. Corp. v. Shulga*, No. 3:08cv365, 2009 WL 1628881, at *3 (W.D.N.C. June 10, 2009), and "the Fourth Circuit has a 'strong policy that cases be decided on the merits.'" *State Employees' Credit Union v. Nat'l Auto Leasing, Inc.*, No. 2:06cv663, 2007 WL 1459301, at 1 (E.D. Va. May 14, 2007).

## III. Analysis

### A. Count One: Declaratory Judgment of Non-Infringement

Singh seeks declaratory judgment that *The Jesus Manuscript* does not infringe upon *The Ikon*'s copyright. To establish copyright infringement, Singh must establish: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Singh sufficiently proves both elements.

First, Haas owns a valid copyright to *The Ikon*. (*See* Compl. ¶ 20 (noting that Singh and Haas were jointly issued a copyright registration for the rewrite of the screenplay *The Ikon*); U.S. Copyright No. PA0001626570.) Second, Singh alleges that the plots, characters, and settings are different for the two movie scripts and that "[t]here is not one single sentence in common between the two works." (Compl. ¶ 40.) Thus, Singh has pleaded sufficient facts for the Court to determine that *The Jesus Manuscript* does not infringe upon the copyright of *The Ikon*. Therefore, the undersigned RECOMMENDS that the Court grant declaratory judgment that *The Jesus Manuscript* does not infringe upon the copyright of *The Ikon*.

### B. Count Two: Tortious Interference with Business Expectancy

Singh seeks to establish that Haas tortiously interfered with Singh's legitimate business expectations contractually established between Singh and Blockbuster. Under Virginia law, to establish tortious interference with a prospective business relationship, Singh must show: "'(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the

relationship or realized the expectancy; and, (4) damage to plaintiff.'" *Commercial Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997) (*quoting Glass v. Glass*, 321 S.E.2d 69, 77 (Va. 1984)). The first and third elements require objective proof. *Id.* at 897. "Mere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action." *Id.*

Singh fails to provide objective proof of the probability of economic benefit. He alleges only that "Blockbuster is continuing to hold Singh's option to make the motion picture, showing a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy." (Mem. P&A Supp. Pl.'s Mot. Entry Default J. 6.) However, "[u]nder the typical option contract, a seller . . . inevitably bears the risk that a buyer . . . will decide against completing the transaction." *Greenwood Mills, Inc. v. Russell Corp.*, 981 F.2d 148, 151 (4th Cir. 1992); *Salomon Forex, Inc. v. Tauber*, 8 F.3d 966, 971 (4th Cir. 1993) ("[T]he option holder incurs no obligation, but rather pays a fee or other consideration for obtaining the enforceable obligation of the option giver to sell . . . upon demand."). Accordingly, even though Singh contends that production of the movie had begun and was terminated, Singh's assertion that Blockbuster holds an option on *The Jesus Manuscript* does not rise to the level of objective proof of a probability of future economic benefit. Therefore, Singh's Complaint insufficiently pleads tortious interference with business expectancy, and the undersigned RECOMMENDS that the Court deny entry of default judgment as to Count Two.

## C. Count Three: Libel

In Count Three of his Complaint, Singh asserts entitlement to relief for the allegedly libelous statements made by Haas. Under Virginia law, the elements of libel are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993).

Publication of a defamatory statement requires that the statement be communicated "to some third person so as to be heard and understood by such person." *Thalhimer Bros. v. Shaw*, 159 S.E. 87, 90 (Va. 1931). Singh amply demonstrates publication. Haas communicated to four producers that Singh had plagiarized *The Jesus Manuscript* from Haas's novel and screenplay, *The Ikon*. (Compl. ¶¶ 24-28.) Haas's intent was understood: upon receipt of Haas's letters, production of *The Jesus Manuscript* terminated. (Compl. ¶ 30.) Thus, Singh has established the first element of his claim for libel.

An actionable statement for libel must be false and defamatory. "[T]hat is, it must 'tend[] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Chapin*, 993 F.2d at 1092 (second alteration in original). The Court finds that Singh has alleged an actionable statement.

First, Singh claims to have written *The Jesus Manuscript* with no contribution from Haas. (Compl. ¶¶ 21-22.). Therefore, Singh has pled factual allegations sufficient to establish the falsity of Haas's accusation of plagiarism.

Second, Singh has pled allegations sufficient for the Court to determine that Haas's statements were defamatory. Where the words themselves are actionable, the plaintiff need not show damages as a result of the statement because such a statement is defamatory *per se*.

*Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 591 (Va. 1954). A statement may be defamatory *per se* if it "(1) 'impute[s] to a person the commission of some criminal offense involving moral turpitude;' (2) 'impute[s] to a person unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment;' or (3) 'prejudice[s a] person in his or her profession or trade.'" *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 292-93 (4th Cir. 2008) (*citing Carwile*, 82 S.E.2d at 591)) (alterations in original). An accusation of "plagiarism [is] perhaps the most serious professional indictment that can be made against an author." *Cornwell v. Sachs*, 99 F. Supp. 2d 695, 708 (E.D. Va. 2000). Therefore, Haas's allegations of plagiarism would prejudice Singh in his profession, and such statements thus constitute actionable statements for purposes of Singh's libel claim.

Finally, the Court determines that Haas had the requisite intent sufficient to establish the third element of a claim of libel. Haas need only have made the accusation negligently. *See Gazette Inc. v. Harris*, 325 S.E.2d 713, 725 (Va. 1985). To show that Haas acted negligently, Singh must show that Haas "either knew [the publication] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based. *Id.* Here, Singh alleges that at the time Haas contacted the producers and accused Singh of plagiarism, Haas had not yet read *The Jesus Manuscript*. (Compl. ¶¶ 6, 28, 29). Accordingly, Singh has pled facts sufficient to show that Haas acted negligently when he accused Singh of plagiarizing *The Ikon*, and the undersigned therefore finds

that Haas made libelous statements for which Singh is entitled to relief. The undersigned RECOMMENDS that the Court grant entry of default judgment as to Count Three.

### D. Count Four: Motion for Injunction

Count Four of Singh's Complaint moves the Court to enter a permanent injunction against Haas. (Compl. ¶ 58.) Singh seeks "a permanent injunction restraining Haas from interfering with Singh's contractual relationship with the various motion picture producers identified [in the Complaint], as well as others yet unidentified" because "Singh's screenplay *The Jesus Manuscript* will not be made into a motion picture unless Haas is enjoined from alleging infringement." (Compl. ¶ 58.) Additionally, Singh moves for "[i]njunctive relief restraining Haas and . . . all those in privity with Haas, from bringing lawsuits or threats of lawsuits against Singh for copyright infringement including but not limited to sale, production, publication, distribution, licensing, display, or other use of *The Jesus Manuscript*, also known as *The Quest*." (Compl. Relief Requested (D).)

"An injunction is an extraordinary remedy whose impact on private rights may be just as onerous as a final determination." *Celotex Corp. v. Edwards*, 514 U.S. 300, 323 (1995). A trial court must exercise its discretion to award an injunction only when it may be enforced. *Taylor v. Mut. Reserve Fund Life Ass'n*, 33 S.E. 385, 389 (Va. 1899) ("It is clear that an injunction ought not be granted which cannot be enforced.").

In this case, the Court recommends granting default judgment as to two counts. The Court sees no need to turn to the extraordinary remedy of the broad permanent injunction sought by Singh, especially given that Haas has already shown his unwillingness to submit to the jurisdiction of this Court by failing to file an Answer and contesting this Court's jurisdiction.

The Court likely would encounter difficulty in enforcing any injunction against Haas seeking to restrain him from interfering with Singh's business relationships or from threatening to bring copyright lawsuits. Thus, the undersigned RECOMMENDS that the Court not issue an injunction against Haas.

## IV. Conclusion

For the foregoing reasons, the undersigned RECOMMENDS that the Court GRANT Singh's Motion for Default Judgment as to Counts One and Three, and DENY Singh's motion as to Counts Two and Four. (Docket No. 10.)

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the Complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

Let the Clerk send copies of this Report and Recommendation to counsel of record and the Honorable Henry E. Hudson.

It is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 4-27-10